Rel: September 12, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2025

––––––––––––––––––––––––

### SC-2025-0019

––––––––––––––––––––––––

**Ex parte Tanner Medical Center, Inc.**

**PETITION FOR WRIT OF MANDAMUS**

**(In re: Richard Terry Cole**

**v.**

**Tanner Medical Center, Inc.)**

**(Randolph Circuit Court: CV-24-900013)**

STEWART, Chief Justice.

Tanner Medical Center, Inc. ("Tanner"), petitions this Court for a writ of mandamus directing the Randolph Circuit Court ("the circuit court") to dismiss the medical-malpractice claims asserted against it by Richard Terry Cole on the basis that the circuit court lacks personal jurisdiction over it or, alternatively, because venue is improper. For the following reasons, we deny the petition.

<u>Background and Procedural History</u>

Tanner is a Georgia corporation with its principal place of business in Carrollton, Georgia. Tanner operates four hospitals in west Georgia with 349 inpatient beds as well as several Georgia-based outpatient medical facilities and clinics. Tanner's operations, however, are not limited to west Georgia. In conjunction with an affiliated corporation, Tanner Medical Center Alabama, Inc., Tanner operates a 15-bed community hospital in Wedowee, Alabama ("the Wedowee hospital"), and 2 to 3 other medical clinics in east Alabama.

Cole is a resident of Randolph County. He alleges that during the week of September 14, 2022, he presented himself to the Wedowee hospital and was subsequently transferred via ambulance to the Tanner Medical Center in Carrollton, Georgia, for a heart-catheterization

procedure. The heart-catheterization procedure was performed by Dr. Christopher Arant. Dr. Arant, an employee of Tanner, is a resident of Georgia who practices medicine solely in Georgia and is not licensed to practice medicine in Alabama and has never practiced medicine in Alabama. Cole alleges that, because of Dr. Arant's medical negligence during the heart-catheterization procedure, he suffered renal failure necessitating further medical interventions, including kidney dialysis. Specifically, Cole asserts that Dr. Arant used too much contrast dye and/or blood thinner during the procedure and failed to properly monitor and document the procedure's duration.

On February 7, 2024, Cole commenced a medical-malpractice action against Tanner and Dr. Arant in the circuit court. As amended, Cole's complaint alleged that Dr. Arant's actions were, alternatively, violations of the Alabama Medical Liability Act, Ala. Code 1975, § 6-5-480 et seq., and the Alabama Medical Liability Act of 1987, Ala. Code 1975, § 6-5-540 et seq. (collectively referred to as "the AMLA"), or the "Georgia Medical Liability Act," Ga. Code Ann., § 51-1-27 et seq., and that Tanner, as Dr. Arant's employer, was vicariously liable for Dr. Arant's medical negligence.

Dr. Arant and Tanner moved to dismiss the action, arguing, among other things, that the circuit court lacked personal jurisdiction over them and that venue in the circuit court was improper. In support of their motions to dismiss, Tanner and Dr. Arant submitted affidavits of Dr. Arant and Carol Crews, Tanner's executive vice president and chief financial officer. Dr. Arant testified that his treatment of Cole had "occurred entirely and only in Georgia." He further stated that he is licensed to practice medicine only in Georgia and that he had never practiced medicine in Alabama. Crews testified that Tanner is incorporated in the State of Georgia, that its principal place of business is in Carrollton, Georgia, and that the vast majority of its operations are in Georgia -- it operates a 181-bed acute-care hospital in Carrollton, Georgia; a 53-bed acute-care hospital in Villa Rica, Georgia; a 23-bed critical-access hospital in Bremen, Georgia; a 92-bed inpatient behavioral-health center in Villa Rica, Georgia; and "various other outpatient medical facilities, clinics, and practices throughout west Georgia." Crews stated that Tanner is registered in Alabama as a foreign nonprofit corporation and that it "is involved -- through and with its affiliate entity Tanner Medical Center Alabama, Inc. -- in the operation

4

of one 15-bed community hospital in Wedowee, Alabama, and 2-3 medical clinics in the east Alabama area."

Cole filed a response opposing Tanner's and Dr. Arant's motions to dismiss, and he submitted documents reflecting content contained on Internet and social-media websites for "Tanner Health System," advertising the medical services and facilities offered by the Tanner Health System serving east Alabama, including the Wedowee hospital.[1] Tanner Health System's website also touted Dr. Arant's services as a member of "Tanner Heart & Vascular Specialists" and indicated that Tanner Heart & Vascular Specialists maintained an office in Wedowee. Cole also submitted a brochure for "Tanner Medical Center/East Alabama," which stated that, in addition to the Wedowee hospital, Tanner Medical Center/East Alabama operated primary-care clinics in Roanoke, Wedowee, and Woodland. That brochure advertised Tanner's "commitment to East Alabama" and stated that "Tanner is no stranger to east Alabama, with relationships in the community spanning the years." The brochure noted that Tanner's east Alabama patients also had

---

[1]Although it is not clear from the materials before us, "Tanner Health System" appears to include all Tanner-affiliated health-care facilities and health-care practices.

access to the Tanner Health System's "full range of additional specialized services, including … [h]eart care."  Finally, Cole submitted his own affidavit in which he stated that, "[a]fter presenting myself to Tanner Medical Center in Wedowee, Alabama, Tanner Medical Center subsequently transferred me to another facility in Carrollton, Georgia, for a Left Heart Catheter placement" and that he had been "transported from Wedowee, Alabama to Carrollton, Georgia via ambulance per the instructions of Defendant, Tanner Medical Center."

The circuit court conducted a hearing on the motions to dismiss on July 30, 2024.  On December 4, 2024, the circuit court entered an order dismissing Cole's claims against Dr. Arant for lack of personal jurisdiction.  The circuit court, however, denied Tanner's motion to dismiss.  Thereafter, Tanner petitioned this Court for a writ of mandamus directing the circuit court to grant its motion to dismiss.

## Standard of Review

"'"A writ of mandamus is an extraordinary remedy, and is appropriate when the petitioner can show (1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.  Ex

6

parte Inverness Constr. Co., 775 So. 2d 153, 156 (Ala. 2000)."'

"Ex parte Gulf Health Hosps., Inc., 321 So. 3d 629, 632 (Ala. 2020)(quoting Ex parte BOC Grp., Inc., 823 So. 2d 1270, 1272 (Ala. 2001)).

> "'"[A] petition for a writ of mandamus is the proper device by which to challenge the denial of a motion to dismiss for lack of in personam jurisdiction. See Ex parte McInnis, 820 So. 2d 795 (Ala. 2001); Ex parte Paul Maclean Land Servs., Inc., 613 So. 2d 1284, 1286 (Ala. 1993). '"An appellate court considers de novo a trial court's judgment on a party's motion to dismiss for lack of personal jurisdiction."' Ex parte Lagrone, 839 So. 2d 620, 623 (Ala. 2002)(quoting Elliott v. Van Kleef, 830 So. 2d 726, 729 (Ala. 2002)). Moreover, '[t]he plaintiff bears the burden of proving the court's personal jurisdiction over the defendant.' Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002)."

> "'Ex parte Dill, Dill, Carr, Stonbraker & Hutchings, P.C., 866 So. 2d 519, 525 (Ala. 2003).

>> "'"'In considering a Rule 12(b)(2), Ala. R. Civ. P., motion to dismiss for want of personal jurisdiction, a court must consider as true the allegations of the plaintiff's complaint not controverted by the defendant's affidavits, Robinson v. Giarmarco &

7

Bill, P.C., 74 F.3d 253 (11th Cir. 1996), and Cable/Home Communication Corp. v. Network Productions, Inc., 902 F.2d 829 (11th Cir. 1990), and "where the plaintiff's complaint and the defendant's affidavits conflict, the ... court must construe all reasonable inferences in favor of the plaintiff." Robinson, 74 F.3d at 255 (quoting Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990)).'"

"'Wenger Tree Serv. v. Royal Truck & Equip., Inc., 853 So. 2d 888, 894 (Ala. 2002)(quoting Ex parte McInnis, 820 So. 2d 795, 798 (Ala. 2001)). However, if the defendant makes a prima facie evidentiary showing that the Court has no personal jurisdiction, "the plaintiff is then required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and he may not merely reiterate the factual allegations in the complaint." Mercantile Capital, LP v. Federal Transtel, Inc., 193 F. Supp. 2d 1243, 1247 (N.D. Ala. 2002)(citing Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000)). See also Hansen v. Neumueller GmbH, 163 F.R.D. 471, 474-75 (D. Del. 1995)("When a defendant files a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), and supports that motion with affidavits, plaintiff is required to controvert those affidavits with his own affidavits or other competent evidence in order to survive the motion.")(citing Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 63 (3d Cir. 1984)).'

"Ex parte Covington Pike Dodge, Inc., 904 So. 2d 226, 229-30 (Ala. 2004)."

8

Ex parte Kentucky Farm Bureau Mut. Ins. Co., [Ms. SC-2024-0608, Mar. 21, 2025] ___ So. 3d ___, ___ (Ala. 2025). The denial of a motion to change venue is also reviewable by a mandamus petition. Ex parte Kennedy, 656 So. 2d 365, 367 (Ala. 1995); see also Ex parte Chin, 385 So. 3d 525, 530 (Ala. 2023) (plurality opinion) (noting that the standard for challenging venue is analogous to the standard for challenging personal jurisdiction).

Analysis

Rule 4.2(b), Ala. R. Civ. P., extends the personal jurisdiction of Alabama courts "'"to the limit of due process under the United States and Alabama Constitutions."'" Ex parte Bradshaw, 328 So. 3d 236, 240 (Ala. 2020) (quoting Ex parte McNeese Title, LLC, 82 So. 3d 670, 673 (Ala. 2011), quoting in turn Hiller Invs. Inc. v. Insultech Grp., Inc., 957 So. 2d 1111, 1115 (Ala. 2006)). The United States Supreme Court has recognized that, for a state court to exercise personal jurisdiction over a defendant, the Fourteenth Amendment to the United States Constitution requires that the defendant have "minimum contacts with [that state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. State of

9

Washington, 326 U.S. 310, 316 (1945) (citation omitted).  Two types of

personal jurisdiction have been recognized by the United States Supreme

Court:  general jurisdiction and specific jurisdiction.

> "Since our seminal decision in International Shoe, our decisions have recognized two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction. Goodyear[ Dunlop Tires Operations, S.A. v. Brown], 564 U.S. [915,] 919 [(2011)]. 'For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.' Id., at 924.  A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State. Id., at 919.  But 'only a limited set of affiliations with a forum will render a defendant amenable to' general jurisdiction in that State. Daimler [AG v. Bauman], 571 U.S. [117,] 137 [(2014)].

> "Specific jurisdiction is very different.  In order for a state court to exercise specific jurisdiction, 'the suit' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum.'  Id., at 127 (internal quotation marks omitted; emphasis added); see Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-473 (1985); Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984).  In other words, there must be 'an affiliation between the forum and underlying controversy, principally, [an] activity or occurrence that takes place in the forum State and is therefore subject to the State's regulation.' Goodyear, 564 U.S., at 919 (internal quotation marks and brackets omitted).  For this reason, 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.' Ibid. (internal quotation marks omitted)."

Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cnty., 582 U.S. 255, 262 (2017).

Tanner argues that the circuit court has neither general nor specific personal jurisdiction over it. Turning first to general jurisdiction, Cole argues that Tanner is "at home" in Alabama because Tanner is involved in the operation of the Wedowee hospital in Alabama, along with two to three other medical clinics in Randolph County, and that Tanner advertises its services within Alabama. However, as the United States Supreme Court has made clear, conducting business in a forum -- even a substantial amount of business -- does not necessarily subject a corporation to general personal jurisdiction within that forum.

For example, in BNSF Railway Co. v. Tyrrell, 581 U.S. 402 (2017), railroad employees sued their employer, BNSF Railway Co. ("BNSF"), a railroad incorporated in Delaware with its principal place of business in Texas, in Montana state courts, seeking recovery for injuries that had occurred outside Montana. The Montana Supreme Court concluded that personal jurisdiction was proper over BNSF given its extensive operations in the state -- BNSF had over 2,000 miles of railroad track and employed over 2,000 workers in Montana. The United States Supreme

11

Court reversed that judgment, noting that "'the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts.'" Id. at 414 (citation omitted). The Court explained:

> "Goodyear[ Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915 (2011),] and Daimler[ AG v. Bauman, 571 U.S. 117 (2014),] clarified that '[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State.' Daimler, 571 U.S., at 127 (quoting Goodyear, 564 U.S., at 919). The 'paradigm' forums in which a corporate defendant is 'at home,' we have explained, are the corporation's place of incorporation and its principal place of business. Daimler, 571 U.S., at 137; Goodyear, 564 U.S., at 924. The exercise of general jurisdiction is not limited to these forums; in an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.' Daimler, 571 U.S., at 139, n. 19. We suggested that Perkins v. Benguet Consol. Mining Co., 342 U.S. 437 (1952), exemplified such a case. Daimler, 571 U.S., at 139, n. 19. In Perkins, war had forced the defendant corporation's owner to temporarily relocate the enterprise from the Philippines to Ohio. 342 U.S., at 447-448. Because Ohio then became 'the center of the corporation's wartime activities,' Daimler, 571 U.S., at 130, n. 8, suit was proper there, Perkins, 342 U.S., at 448.
>
> "….
>
> "BNSF, we repeat, is not incorporated in Montana and does not maintain its principal place of business there. Nor is BNSF so heavily engaged in activity in Montana 'as to render [it] essentially at home' in that State. See Daimler, 571 U.S., at 127 (internal quotation marks omitted). As earlier noted,

> BNSF has over 2,000 miles of railroad track and more than 2,000 employees in Montana. But, as we observed in <u>Daimler</u>, 'the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts.' <u>Id.</u>, at 139, n. 20 (internal quotation marks and alterations omitted). Rather, the inquiry 'calls for an appraisal of a corporation's activities in their entirety'; '[a] corporation that operates in many places can scarcely be deemed at home in all of them.' <u>Id.</u>, at 140, n. 20. In short, the business BNSF does in Montana is sufficient to subject the railroad to specific personal jurisdiction in that State on claims related to the business it does in Montana. But in-state business, we clarified in <u>Daimler</u> and <u>Goodyear</u>, does not suffice to permit the assertion of general jurisdiction over claims … that are unrelated to any activity occurring in Montana."

<u>BNSF</u>, 581 U.S. at 413-14.

Applying the reasoning in <u>BNSF</u> to this case, we conclude that there is no general jurisdiction over Tanner in Alabama. Tanner is not incorporated in Alabama, and it does not maintain its principal place of business in this state. Although Tanner operates a 15-bed hospital and 2-3 clinics in Alabama, the totality of its operations confirms that it is not "at home" in Alabama so as to permit the exercise of general jurisdiction over Cole's claims against it in this case.

Whether the circuit court may exercise specific personal jurisdiction over Tanner, however, is a closer question. Tanner argues that the alleged negligent acts -- Dr. Arant's failure to monitor the length

13

of Cole's heart-catheterization procedure or his overuse of blood thinner or contrast dye -- occurred in Georgia and were unrelated to Cole's initial treatment at the Wedowee hospital. Cole responds that, although the specific acts of alleged negligence ultimately occurred in a Tanner facility in Georgia, his medical treatment, which culminated in the heart-catheterization procedure, was initiated at the Wedowee hospital, a Tanner-operated facility, in Alabama. Thus, Cole contends that his treatment, and ultimately his injury, in Georgia arose out of and was related to Tanner's activities in Alabama, which, he says, is sufficient for the circuit court to exercise specific personal jurisdiction over Tanner in this case.

> "Specific jurisdiction is different [from general jurisdiction]: It covers defendants less intimately connected with a State, but only as to a narrower class of claims. The contacts needed for this kind of jurisdiction often go by the name 'purposeful availment.' Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). The defendant, we have said, must take 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State.' Hanson v. Denckla, 357 U.S. 235, 253 (1958). The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.' Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984). They must show that the defendant deliberately 'reached out beyond' its home -- by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there. Walden v. Fiore, 571 U.S. 277, 285 (2014) (internal quotation marks and

14

alterations omitted).  Yet even then -- because the defendant is not 'at home' -- the forum State may exercise jurisdiction in only certain cases.  The plaintiff's claims, we have often stated, 'must arise out of or relate to the defendant's contacts' with the forum.  Bristol-Myers[ Squibb Co. v. Superior Court of Cal., San Francisco Cnty.], 582 U.S. [255,]  262 [(2017)] (quoting Daimler[ AG v. Bauman], 571 U.S. [117,] 127 [(2014)]; alterations omitted); see, e.g., Burger King, 471 U.S., at 472; Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984); International Shoe[ Co. v. State of Washington], 326 U.S. [310,] 319 [(1945)].  Or put just a bit differently, 'there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum state and is therefore subject to the State's regulation."' Bristol-Myers, 582 U.S., at 262 (quoting Goodyear[ Dunlop Tire Operations, S.A. v. Brown], 564 U.S. [915,] 919 [(2011)).

"These  rules  derive from and reflect two sets of values -- treating defendants fairly and protecting 'interstate federalism.' World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 293 (1980); see id., at 297-298.  Our decision in International Shoe founded specific jurisdiction on an idea of reciprocity between a defendant and a State: When (but only when) a company 'exercises the privilege of conducting activities within a state' -- thus 'enjoy[ing] the benefits and protection of [its] laws' -- the State may hold the company to account for related misconduct.  326 U.S., at 319; see Burger King, 471 U.S., at 475-476. Later decisions have added that our doctrine similarly provides defendants with 'fair warning' -- knowledge that 'a particular activity may subject [it] to the jurisdiction of a foreign sovereign.'  Id., at 472 (internal quotation marks omitted); World-Wide Volkswagen, 444 U.S., at 297 (likewise referring to 'clear notice').  A defendant can thus 'structure [its] primary conduct' to lessen or avoid exposure to a given State's courts. Id., at 297. And this Court has considered alongside defendants' interests those of the States in relation to each other.  One State's 'sovereign power

15

to try' a suit, we have recognized, may prevent 'sister States' from exercising their like authority.  Id., at 293.  The law of specific jurisdiction thus seeks to ensure that States with 'little legitimate interest' in a suit do not encroach on States more affected by the controversy.  Bristol-Myers, 582 U.S., at 263."

Ford Motor Co. v. Montana Eighth Jud. Dist. CA., 592 U.S. 351, 359-60 (2021).

In this case, Tanner does not dispute that it "purposefully avail[ed] itself of the privilege of conducting activities within [Alabama]." Hanson v. Denckla, 357 U.S. 235, 253 (1958).  Indeed, Tanner operates the Wedowee hospital and two to three clinics in Alabama, through which it seeks to serve the medical needs of the communities in and around Randolph County, Alabama.  Rather, Tanner focuses on the relatedness of its Alabama contacts to the claims made by Cole.  Tanner argues that the acts of alleged negligence made the basis of Cole's claims (the alleged overuse of contrast dye or blood thinner during Cole's procedure and/or the failure to monitor the length of the procedure) all occurred in Georgia.

In addressing whether Cole's claims arise out of or relate to Tanner's Alabama contacts, the United States Supreme Court's recent decision in Ford Motor Co. v. Montana Eighth Judicial District Court is instructive.  In Ford, the Court considered two cases in which injured

16

motorists had sued Ford Motor Company ("Ford") in the state courts of Montana and Minnesota alleging product-liability, design-defect, and other claims relating to Ford's design and manufacturing of the vehicles operated by the motorists. In each case the accident occurred in the state in which the suit was brought, and each of the plaintiffs was a resident of the forum state. Furthermore, Ford did substantial business in each forum -- it sold, advertised, and serviced vehicles in the forum states. However, in each case, the vehicle made the basis of the claims had originally been purchased outside the forum. Ford moved to dismiss the cases, arguing that jurisdiction was improper because the vehicles at issue were not designed, manufactured, or originally sold in the forum states -- in other words, that the plaintiffs' accidents were not caused by Ford's forum contacts. The United States Supreme Court rejected Ford's argument. That Court explained:

> "Ford contends that our jurisdictional rules prevent Montana's and Minnesota's courts from deciding these two suits. … Ford's claim is … that [its] activities [in Montana and Minnesota] do not sufficiently connect to the suits, even though the resident-plaintiffs allege that Ford cars malfunctioned in the forum States. In Ford's view, the needed link must be causal in nature: Jurisdiction attaches 'only if the defendant's forum conduct <u>gave rise</u> to the plaintiff's claims.' Brief for Petitioner 13 (emphasis in original). And that rule reduces, Ford thinks, to locating specific jurisdiction

in the State where Ford sold the car in question, or else the States where Ford designed and manufactured the vehicle. … On that view, the place of accident and injury is immaterial. So (Ford says) Montana's and Minnesota's courts have no power over these cases.

"But Ford's causation-only approach finds no support in this Court's requirement of a 'connection' between a plaintiff's suit and a defendant's activities. Bristol-Myers[ Squibb Co. v. Superior Ct. of California, San Francisco Cnty., 582 U.S. [255,] 260 [(2017)]. That rule indeed serves to narrow the class of claims over which a state court may exercise specific jurisdiction. But not quite so far as Ford wants. None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do. As just noted, our most common formulation of the rule demands that the suit 'arise out of or relate to the defendant's contacts with the forum.' Id., at 262 (quoting Daimler[ AG v. Bauman], 571 U.S. [117,] 127 [(2014)]; emphasis added; alterations omitted); see supra, at 359. The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing. That does not mean anything goes. In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum. But again, we have never framed the specific jurisdiction inquiry as always requiring proof of causation -- i.e., proof that the plaintiff's claim came about because of the defendant's in-state conduct. See also Bristol-Myers, 582 U.S., at 262, 264 (quoting Goodyear[ Dunlop Tires Operations, S.A. v. Brown], 564 U.S. [915,] 919 [(2011)] (asking whether there is 'an affiliation between the forum and the underlying controversy,' without demanding that the inquiry focus on cause). So the case is not over even if, as Ford argues, a causal test would put jurisdiction in only the States of first sale, manufacture, and design. A different State's courts may yet have jurisdiction, because of another 'activity [or] occurrence'

18

involving the defendant that takes place in the State. Bristol-Myers, 582 U.S., at 262, 264 (quoting Goodyear, 564 U.S., at 919)."

Ford, 592 U.S. at 361-62.

The Court in Ford concluded that, although the vehicles at issue had not been designed, manufactured, or originally sold in the forum states, its activities in those states -- advertising, selling, and servicing Ford vehicles -- created a demand for Ford vehicles in the forum states and fostered an active resale market for its older models.

"In other words, Ford has systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege malfunctioned and injured them in those states. So there is a strong 'relationship among the defendant, the forum, and the litigation' -- the 'essential foundation' of specific jurisdiction. Helicopteros[ Nacionales de Columbia, S.A. v. Hall], 466 U.S. [408,] 414 [(1984)] (internal quotation marks omitted)."

Ford, 592 U.S. at 365-66. Accordingly, the Court in Ford concluded that "the 'relationship among the defendant, the forum[s], and the litigation' … is close enough to support specific jurisdiction," Id. at 371 (quoting Walden v. Fiore, 571 U.S. 277, 284 (2014)). The Court, therefore, affirmed the Montana and Minnesota state-court judgments entered against Ford. See also Sawyer v. Cooper Tire & Rubber Co., 412 So. 3d 603 (Ala. 2024) (applying Ford and holding that Alabama court had

19

specific jurisdiction over tire manufacturer with in-state dealer network in action involving Alabama accident caused by defective tire).

In contrast with Ford, in Walden v. Fiore, a Georgia police officer working in the Atlanta airport searched two airline passengers traveling from Puerto Rico to Nevada, where they lived, as they were attempting to board a connecting flight in Atlanta. The officer seized a large sum of money from the passengers. The passengers later sued the Georgia police officer in Nevada, arguing that Nevada had specific jurisdiction over the officer because their injury (the inability to use their money) had occurred in Nevada. The United States Supreme Court disagreed and held that, notwithstanding the effects of the officer's conduct in Nevada, the lack of any contacts with Nevada precluded the exercise of specific jurisdiction over the officer: "[The officer] never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada. In short, when viewed through the proper lens -- whether the defendant's actions connect him to the forum -- [the officer] formed no jurisdictionally relevant contacts with Nevada." 571 U.S. at 289.

Applying the reasoning of Ford, Walden, and other relevant authorities to the facts of this case, we cannot say that Tanner has

established a clear legal right to an order dismissing Cole's claims against it based on a lack of personal jurisdiction. Tanner argues that the alleged acts of medical negligence occurred in Georgia and that those specific acts have no relationship to its activities in Alabama. That argument, however, sounds very much like the causation argument rejected by the United States Supreme Court in Ford. As the Court in Ford explained, the doctrine of specific jurisdiction is not so narrow as to require the directly causative conduct -- in Ford, the design, manufacture, and sale of vehicles -- to have occurred within the forum state. Rather, "the rule demands that the suit 'arise out of or relate to the defendant's contacts in the forum.'" Ford, 592 U.S. at 362 (quoting Bristol-Myers, 582 U.S. at 262); see also Sawyer, 412 So. 3d at 616 (holding that jurisdiction may exist "even if there is no direct causal link between the defendant's conduct in the forum state and the plaintiff's claims" so long as the claims are sufficiently related). In Ford, Ford's marketing, selling, and servicing a specific model vehicle in the forum state was sufficient to establish specific jurisdiction when a forum resident was injured in an in-state crash involving the same type of vehicle. Here, the connection is more direct. Tanner's marketing

21

materials make clear that Tanner has positioned itself as a regional health-care provider serving east Alabama and west Georgia and that patients at Tanner's east Alabama medical facilities have "access to Tanner's full range of additional specialized services," which are, by and large, located in Georgia. In line with that model, Cole, an Alabama resident, sought medical treatment at a Tanner-operated facility in Alabama and was then transferred by ambulance to a Tanner-operated facility in Georgia for more specialized care -- a heart-catheterization procedure. For Cole, the heart-catheterization procedure was in continuity with the medical care he had sought at Tanner's Alabama facility. Accordingly, even though the particular acts of negligence forming the basis of Cole's claims occurred in Georgia, "the 'relationship among the defendant, the forum[], and the litigation' … is close enough to support specific jurisdiction." Ford, 592 U.S. at 371 (quoting Walden, 571 U.S. at 284). Therefore, Tanner has not demonstrated a clear legal right to a writ of mandamus directing the circuit court to grant its motion to dismiss the claims against it based on a lack of personal jurisdiction.

Finally, Tanner argues that even if it is subject to the circuit court's jurisdiction, Cole's claims must still be dismissed because venue is

improper in the circuit court. Tanner contends that § 6-5-546, Ala. Code 1975, a provision of the AMLA, applies. That statute provides, in pertinent part:

> "In any action for injury or damages or wrongful death whether in contract or in tort against a health care provider based on a breach of the standard of care, the action must be brought in the county wherein the act or omission constituting the alleged breach of the standard of care by the defendant actually occurred. … If at any time prior to the commencement of the trial of the action it is shown that the plaintiff's injuries … did not result from acts or omissions which took place in more than one county, on motion of any defendant the court shall transfer the action to such county wherein the alleged acts or omissions actually occurred."

Tanner posits that, because the relevant acts or omissions in this case all occurred in Georgia, there is no county in Alabama in which venue is proper, and, therefore, it contends, the action must be dismissed. Cole, on the other hand, contends that Alabama's general venue statutes apply to this case. See, e.g., § 6-3-7(a)(3), Ala. Code 1975 (providing that, in a civil action against corporation, venue is proper in county where plaintiff resides and the corporation does business by agent).

Here, to the extent that Cole's claims fall within the AMLA, there is no question that § 6-5-546 is the operative venue provision. See Kennedy, 656 So. 2d at 368. However, Cole's claims are alternatively

23

made pursuant to Georgia's medical-malpractice law. See Ga. Code Ann., § 51-1-27 et seq. Indeed, Cole's claims are based on a Georgia physician's alleged breach of a standard of medical care during a procedure that occurred in Georgia. Although Alabama will generally apply its own procedural rules even when applying the substantive law of another state, see Middleton v. Caterpillar Indus., Inc., 979 So. 2d 53, 57 (Ala. 2007) ("Although lex loci delicti governs substantive law, lex fori -- the law of the forum -- governs procedural matters."), it is not so clear that the AMLA's venue provision applies to claims of medical malpractice brought under another state's substantive law for events occurring outside Alabama.[2] If not, Alabama's default venue provisions apply, and venue would appear to be appropriate in the circuit court. We need not

_____

[2]Tanner argued below that Cole's claims under the AMLA were due to be dismissed under Rule 12(b)(6), Ala. R. Civ. P., because the AMLA does not apply to medical-negligence claims arising outside Alabama. For instance, it argued that Dr. Arant does not fall within the AMLA's definition of a "health care provider," see § 6-5-542(1), Ala. Code 1975, because he is not licensed to practice medicine in Alabama, see § 6-5-481(1), Ala. Code 1975, and it further posited that the standard of care would be governed by Georgia law, not the AMLA. It appears to be a question of first impression whether the AMLA's venue provision would apply to and preclude claims based on out-of-state medical negligence not otherwise governed by the AMLA.

reach that question today, however, because Tanner has not directly addressed it in its mandamus petition. Although Tanner argues in its petition that § 6-5-546 applies to Cole's action because it is a medical-malpractice action, it has not addressed or briefed whether § 6-5-546 applies to an action like Cole's, which is brought under another state's substantive law for conduct occurring outside Alabama; nor has it cited any authority indicating that § 6-5-546 requires the outright dismissal of such an action.

> "'"When an appellant [or petitioner] fails to properly argue an issue, that issue is waived and will not be considered." "An appeals court will consider only those issues properly delineated as such, and no matter will be considered on appeal [or mandamus review] unless presented and argued in brief."' Tucker v. Cullman-Jefferson Counties Gas Dist., 862 So. 2d 317, 319 (Ala. 2003) (quoting Asam v. Devereaux, 686 So. 2d 1222, 1224 (Ala. Civ. App. 1996), and Braxton v. Stewart, 539 So. 2d 284, 286 (Ala. Civ. App. 1988), respectively (emphasis omitted). '"It is well established that it is not the function of an appellate court to create, research, or argue an issue on behalf of the [petitioner]."' Mottershaw v. Ledbetter, 148 So. 3d 45, 54 (Ala. 2013) (quoting Gonzalez v. Blue Cross/Blue Shield of Alabama, 760 So. 2d 878, 883 (Ala. Civ. App. 2000)). A writ of mandamus is an extraordinary writ that will be issued only when the petitioner establishes a 'clear legal right' to relief. Ex parte Davis, 930 So. 2d [497,] 499 [(Ala. 2005)]."

<u>Ex parte Drury Hotels Co.</u>, 303 So. 3d 1188, 1193 (Ala. 2020). Accordingly, Tanner has not demonstrated a clear legal right to an order dismissing Cole's action based on improper venue.

## Conclusion

As explained above, we conclude that Tanner has not established a clear legal right to mandamus relief. Accordingly, we deny the petition for a writ of mandamus.

PETITION DENIED.

Bryan, J., concurs.

Cook, J., concurs specially, with opinion, which McCool, J., joins.

Mendheim and Lewis, JJ., concur in the result.

Shaw and Sellers, JJ., dissent, with opinions.

Wise, J., dissents.

COOK, Justice (concurring specially).

Because the Randolph Circuit Court has specific personal jurisdiction over Tanner Medical Center, Inc. ("Tanner"), and because Tanner has failed to demonstrate a clear legal right to an order dismissing the action against it based on improper venue, I concur fully with this Court's decision to deny Tanner's petition for a writ of mandamus. I write specially, however, to address issues I believe the bench and bar should note for future cases.

First, there is a significant debate between the parties about whether the Alabama Medical Liability Act ("the AMLA"), which contains the venue provision at issue here, even applies to the claims made in this action. The AMLA's venue provision provides, in relevant part:

> "In any action for injury or damages ... <u>against a health care provider</u> based on a breach of the standard of care, <u>the action must be brought in the county wherein the act or omission constituting the alleged breach of the standard of care by the defendant actually occurred</u>."

§ 6-5-546, Ala. Code 1975 (emphasis added).

A "health care provider" is defined in the AMLA as "[a] <u>medical practitioner</u>, dental practitioner, medical institution, <u>physician</u>, dentist,

27

hospital, or other health care provider <u>as those terms are defined in [Ala. Code 1975, §] 6-5-481</u>." § 6-5-542(1), Ala. Code 1975 (emphasis added). Under § 6-5-481(1), Ala. Code 1975, a "medical practitioner" is "[a]nyone <u>licensed to practice medicine or osteopathy in the State of Alabama, engaged in such practice</u>, including medical professional corporations, associations, and partnerships." (Emphasis added.) That Code section defines a "physician" as "[a]ny person <u>licensed to practice medicine in Alabama</u>." § 6-5-481(5) (emphasis added).

The materials before us indicate -- and the parties do not dispute -- that "Dr. Arant[, a physician employed by Tanner who is alleged to have committed medical negligence,] does not practice medicine in Alabama, is not licensed to practice medicine in Alabama, and has never practiced or been licensed to practice in Alabama." Petition at 10. Thus, he does not appear to be a "health care provider" under the AMLA. This would necessarily call into question whether any of the AMLA's provisions, including its venue provision, could apply here.

As noted in the main opinion, if the AMLA does not apply, then Alabama's default venue provisions apply, and venue would appear to be appropriate in the circuit court. This seems logical. Stated simply, if

28

personal jurisdiction exists in Alabama and there is no express statutory provision to the contrary, there should normally be venue somewhere in Alabama.

While I believe this is the correct answer to the legal issues presented to us in this case, I am very concerned about the problems identified in Justice Sellers's special writing. His arguments lead me to believe that this is a case in which we should be considering the doctrine of <u>forum non conveniens</u>.

That doctrine is codified in § 6-5-430, Ala. Code 1975, which provides, in pertinent part:

> "Whenever … a claim … has <u>arisen outside of this state</u> against any person or corporation, such claim may be enforceable in the courts of this state in any county in which jurisdiction of the defendant can be legally obtained in the same manner in which jurisdiction could have been obtained if the claim had arisen in this state; provided, however, <u>the courts of this state shall apply the doctrine of forum non conveniens in determining whether to accept or decline to take jurisdiction of an action based upon such claim originating outside this state</u>; and provided further that, <u>if upon motion of any defendant</u> it is shown that <u>there exists a more appropriate forum outside this state</u>, taking into account the location where the acts giving rise to the action occurred, the convenience of the parties and witnesses, and the interests of justice, <u>the court must dismiss the action without prejudice</u>."

(Emphasis added.) Our Court has also previously explained that that

doctrine

> "'"allows a court, which has jurisdiction and which is located where venue is proper, to refuse to exercise its jurisdiction when, in the interest of the parties and witnesses, and in the interest of justice and judicial economy, the case could be more appropriately tried in another forum."'"

Ex parte Preston Hood Chevrolet, Inc., 638 So. 2d 842, 844 (Ala. 1994) (quoting Ex parte Employers Ins. of Wausau, 590 So. 2d 888, 892 (Ala. 1991)).

Here, the materials before us provide several bases for why this case might be tried more conveniently in Georgia rather than in Alabama and indicate that the "interest of justice" also favors a Georgia venue. In particular, the materials before us undisputedly indicate that the medical treatment occurred in a Georgia medical facility by a Georgia physician who is licensed and regulated by Georgia's medical boards and that the records of such services and the witnesses regarding such services are almost certainly in Georgia. While I need not decide the question, there is also a significant argument to be made that Georgia law should apply to the provision of these medical services in Georgia.

However, as § 6-5-430 makes clear, for the trial court to dismiss an action without prejudice under the doctrine of forum non conveniens, the

defendant must make a motion to show that there exists a more appropriate forum outside the state. Given that no such motion was made in this case, we cannot reach this question even if we believe there are significant reasons for why this action should not be in an Alabama court.

In sum, it is far from clear that the AMLA governs this case, and, if it does not, it would appear that Alabama's default venue statute applies. Additionally, while the doctrine of <u>forum non conveniens</u> likely could apply here, the parties made no argument to the trial court that the doctrine should apply. In any event, because Tanner failed to sufficiently establish that it has a clear legal right to the dismissal of Richard Terry Cole's claims against it, I agree with the main opinion that its petition must be denied.

McCool, J., concurs.

SHAW, Justice (dissenting).

I respectfully dissent.

I do not believe that the trial court has personal jurisdiction over the defendant in this action, Tanner Medical Center, Inc. ("Tanner"). Tanner did not have the specific contacts with this state necessary for establishing specific personal jurisdiction. The United States Supreme Court's decision in <u>Ford Motor Co. v. Montana Eighth Judicial District Court</u>, 592 U.S. 351, 355 (2021), which involved allegedly defective tangible products that injured persons in the states where suits were filed, does not require the conclusion that specific jurisdiction exists in this case, which involves medical services performed outside this state. Specifically, the Supreme Court's analysis in <u>Ford</u> of whether a plaintiff's claims "relate" to the defendant's contacts with a forum relied significantly on whether a defendant's wrongful conduct has an impact, such as an injury, in the forum state, even if the conduct causing that impact or injury does not occur there. That factor does not exist in the case before us. Thus, under the analysis of <u>Ford</u>, the specific contacts in this case were insufficient to establish specific personal jurisdiction. Because our courts lack personal jurisdiction over Tanner, I would grant

the petition for a writ of mandamus. I thus respectfully dissent to denying it.

As noted in the main opinion, the plaintiff, Richard Terry Cole, went to a medical facility affiliated with Tanner that was located in Alabama. Cole was then transported to a Tanner facility in Georgia to undergo a medical procedure. There is no allegation that any services, treatment, or conduct that occurred in Alabama was wrongful or tortious. Instead, Cole alleges that the care he received in Georgia by Tanner and its agents, including a Georgia licensed physician, was, essentially, medical malpractice and caused him injury. The complaint does not suggest that the procedure inflicted Cole with a latent, noninjurious condition that later caused or manifested into an injury (if that is possible); rather, the complaint suggests that Cole was immediately injured during the procedure in Georgia, although the extent of his injuries may have later increased when he returned to Alabama.[3]

---

[3]The first amended complaint alleges that, "[s]hortly after undergoing the Left Heart Catheterization, Mr. Cole began to experience symptoms of renal damage/failure" and that "[i]t was later determined that Mr. Cole's subsequent medical treatment was necessary or was otherwise required as a result of the initial treatment and care he received."

33

Further, because everything relating to the alleged medical malpractice occurred in Georgia, it would appear to me that Georgia law would govern Cole's substantive claims.[4]

Nevertheless, Cole commenced an action against Tanner in Alabama. The issue is whether a court in Alabama, the forum state, has personal jurisdiction to hear a claim against Tanner, which is a Georgia corporation with its principle place of business located in Georgia.

> "The Due Process Clause of the Fourteenth Amendment permits a forum state to subject a nonresident defendant to its courts only when that defendant has sufficient 'minimum contacts' with the forum state. International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945). The critical question with regard to the nonresident defendant's contacts is whether the contacts are such that the nonresident defendant '"should reasonably anticipate being haled into court"' in the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, [486], 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985), quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)."

Elliott v. Van Kleef, 830 So. 2d 726, 730-31 (Ala. 2002).

---

[4]To the extent that Alabama law might apply to Cole's claims, it would appear to have only the most limited application, if at all; everything Cole alleges went wrong occurred in Georgia. Therefore, for purposes of this writing, I will assume that Georgia law applies to Cole's claims.

34

There are "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." <u>Ford</u>, 592 U.S. at 358. I agree with the main opinion that there is no general personal jurisdiction in this case. Regarding specific personal jurisdiction, this Court has stated:

> "The touchstone of specific jurisdiction is whether the defendant has '"purposefully avail[ed] itself of the privilege of conducting activities within the forum State."' <u>Ford Motor Co.</u>, 592 U.S. at 359, 141 S. Ct. at 1024 (quoting <u>Hanson v. Denckla</u>, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)). 'This purposeful-availment requirement assures that a defendant will not be haled into a jurisdiction as a result of "'the unilateral activity of another person or a third person.'"' <u>Elliott</u>, 830 So. 2d at 731 (quoting <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). Crucially, specific jurisdiction must be based on '"the defendant's contacts with the forum state that are related to the cause of action"' in the suit at hand, and, though these contacts '"need not be continuous and systematic,"' they must be substantial enough that the defendant could fairly anticipate a suit in the forum state. <u>Id.</u> at 730 (quoting <u>Ex parte Phase III Constr., Inc.</u>, 723 So. 2d 1263, 1266 (Ala. 1998) (Lyons, J., concurring in the result)); <u>see also</u> <u>Walden v. Fiore</u>, 571 U.S. 277, 284, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014) (stressing that 'the defendant's <u>suit-related</u> conduct must create a substantial connection with the forum State' (emphasis added))."

<u>Pruitt v. AAA Interstate Transp., LLC</u>, 358 So. 3d 1144, 1149-50 (Ala. 2022).

Contacts that can give rise to specific personal jurisdiction are extensively addressed in the Ford decision. In that case, plaintiffs in two different states filed defective-product actions related to vehicles manufactured by Ford Motor Company ("Ford"). Those vehicles had been designed and built by Ford, and originally purchased, outside the forum states where the actions were commenced. The plaintiffs were later injured by alleged defects in the vehicles, and they filed lawsuits in the forum states. Notably, their injuries occurred in the forum states. Ford argued that personal jurisdiction was proper in the states where the vehicles were purchased or designed and manufactured, but not in the forum states. Before beginning its analysis, the Supreme Court appeared to summarize its holding as follows: "When a company like Ford serves a market for a product in a State and that product causes injury in the State to one of its residents, the State's courts may entertain the resulting suit." Ford, 592 U.S. at 355 (emphasis added).

As to specific contacts, the Court in Ford stated that, even when a defendant has taken "'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State,'" "'there must be "an affiliation between the forum and the underlying

36

controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."'" Ford, 592 U.S. at 359-60 (citations omitted). The Court also noted that its decisions "have added that our doctrine similarly provides defendants with 'fair warning' -- knowledge that 'a particular activity may subject [it] to the jurisdiction of a foreign sovereign.'" Ford, 592 U.S. at 360 (citation omitted). Further, the Court stated:

> "And this Court has considered alongside defendants' interests those of the States in relation to each other. One State's 'sovereign power to try' a suit, we have recognized, may prevent 'sister States' from exercising their like authority. The law of specific jurisdiction thus seeks to ensure that States with 'little legitimate interest' in a suit do not encroach on States more affected by the controversy."

592 U.S. at 360 (citations omitted).

As to these general issues addressed in Ford, clearly Tanner's affiliated facilities and operations in Alabama are subject to Alabama law; however, the medical services it provides in Georgia generally are not. Further, I question whether Tanner and its agents, while performing a medical procedure on, and providing treatment to, Cole in Georgia and while being regulated by Georgia law, had "fair warning" that they were subject to the jurisdiction of some other state. While it

37

would not appear that a simple balancing test as to which state is "more affected by the controversy" is determinative, clearly the State of Georgia has the greater interest in hearing a tort action under its law concerning acts that wholly occurred, and allegedly harmed a person, within its jurisdiction.

Ford suggested that it could not be sued in the forum states, despite the fact that it actively sought to serve a market in those states:

> "Ford's claim is instead that those activities do not sufficiently connect to the suits, <u>even though the resident-plaintiffs allege that Ford cars malfunctioned in the forum States</u>. In Ford's view, the needed link must be causal in nature: Jurisdiction attaches 'only if the defendant's forum conduct <u>gave rise</u> to the plaintiff's claims.' Brief for Petitioner 13 (emphasis in original). And that rule reduces, Ford thinks, to locating specific jurisdiction in the State where Ford sold the car in question, or else the States where Ford designed and manufactured the vehicle."

<u>Ford</u>, 592 U.S. at 361 (first emphasis added).

In more specifically discussing the required "connection" between a suit and the forum state for purposes of specific jurisdiction, the Court rejected the "causation-only" approach suggested by Ford:

> "None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do. As just noted, our most common formulation of the rule demands that the suit 'arise out of <u>or relate to</u> the defendant's contacts with the forum.' The first

half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing. That does not mean anything goes. In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum. But again, we have never framed the specific jurisdiction inquiry as always requiring proof of causation -- i.e., proof that the plaintiff's claim came about because of the defendant's in-state conduct. So the case is not over even if, as Ford argues, a causal test would put jurisdiction in only the States of first sale, manufacture, and design. A different State's courts may yet have jurisdiction, because of 'another activity [or] occurrence' involving the defendant that takes place in the State."

Ford, 592 U.S. at 362 (citations omitted; last emphasis added).

In illustrating "'another activity [or] occurrence' involving the defendant that takes place in the forum State," the Court in Ford noted caselaw examining defendants' acts of serving the markets in forum states, but it was careful to note that, in such cases, injuries occurred in the forum states: "And indeed, this Court has stated that specific jurisdiction attaches in cases identical to the ones here -- when a company like Ford serves a market for a product in the forum State and the product malfunctions there." Ford, 592 U.S. at 363 (emphasis added). It cited as an example what occurred in World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980):

"In <u>World-Wide Volkswagen</u>, the Court held that an Oklahoma court could not assert jurisdiction over a New York car dealer just because a car it sold later caught fire in Oklahoma. 444 U.S., at 295. But in so doing, we contrasted the dealer's position to that of two other defendants -- Audi, the car's manufacturer, and Volkswagen, the car's nationwide importer (neither of which contested jurisdiction):

> "'[I]f the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in [several or all] other States, it is not unreasonable to subject it to suit in one of those States <u>if its allegedly defective merchandise has there been the source of injury</u> to its owner or to others.' <u>Id.</u>, at 297.'

"Or said another way, if Audi and Volkswagen's business deliberately extended into Oklahoma (among other States), then Oklahoma's courts could hold the companies accountable <u>for a car's catching fire there</u> -- even though the vehicle had been designed and made overseas and sold in New York. For, the Court explained, a company thus 'purposefully avail[ing] itself' of the Oklahoma auto market 'has clear notice' of its exposure in that State to suits <u>arising from local accidents</u> involving its cars. …

"Our conclusion in <u>World-Wide Volkswagen</u> ... has appeared and reappeared in many cases since. So, for example, the Court in <u>Keeton</u>[ v. Hustler Magazine, Inc., 465 U.S. 770 (1984),] invoked that part of <u>World-Wide Volkswagen</u> to show that when a corporation has 'continuously and deliberately exploited [a State's] market, it must reasonably anticipate being haled into [that State's] court[s]' to defend actions 'based on' products <u>causing injury there</u>. ... And in <u>Daimler</u>[ AG v. Bauman, 571 U.S. 117 (2014)],

we used the Audi/Volkswagen scenario as a paradigm case of specific jurisdiction (though now naming Daimler, the maker of Mercedes Benzes). Said the Court, to 'illustrate[]' specific jurisdiction's 'province[]': A California court would exercise specific jurisdiction 'if a California plaintiff, <u>injured in a California accident</u> involving a Daimler-manufactured vehicle, sued Daimler [<u>in that court</u>] alleging that the vehicle was defectively designed.' 571 U.S., at 127, n. 5."

<u>Ford</u>, 592 U.S. at 363-64 (emphasis added).

In its examples, the Court looked not only to the defendants' forum-state conduct in marketing and serving its product, but also to the fact that the injuries from the alleged out-of-state wrongful conduct by the defendants <u>actually occurred in the forum state</u>. Its "illustrat[ion]" of specific jurisdiction's "province" includes the fact that an accident and injury occurred in the state where the lawsuit was filed. That is readily possible in a defective-product action -- the product is designed, manufactured, or sold in one place and then is transferred to another, where it had been actively marketed, and can then cause an injury "there." See <u>Sawyer v. Cooper Tire & Rubber Co.</u>, 412 So. 3d 603 (Ala. 2024) (holding, under <u>Ford</u>, that there was specific jurisdiction over a tire company in an action commenced in Alabama when, among other things, an allegedly defective tire had been purchased in Alabama and had allegedly caused an accident in Alabama).

41

In this case, Tanner's alleged wrongful conduct and Cole's injury occurred in Georgia, not in Alabama. Under the Supreme Court's explanation in Ford, while Tanner "serves a market" for medical services in Alabama, the medical service at issue, the alleged medical malpractice that occurred during that service, and the resulting injury did not occur "there." While it is "'not unreasonable to subject [Tanner] to suit in'" a state where its alleged malpractice "'has there been the source of injury,'" the alleged malpractice and injury in this case occurred in Georgia. Ford, 592 U.S. at 363 (citation omitted). A company purposefully availing itself of the market for medical services in Alabama "'has clear notice' of its exposure in" Alabama "to suits arising from local accidents," but there was no accident -- misconduct or injury -- that occurred in Alabama in this case; thus, there was no "clear notice." Id. If Tanner "'continuously and deliberately exploited [Alabama's] market,'" it could "'reasonably anticipate being haled into'" a court in Alabama only if its actions caused "injury there," which is not the case. Id. at 364 (citation omitted).

In explaining "why Ford is subject" to the jurisdiction of the forum-state courts in that case, the Supreme Court first pointed to the business Ford regularly conducted in those states -- advertising, fostering

42

connections to its vehicles' owners, providing the vehicles for sale,

offering services to maintain and repair the vehicles it manufactured, etc.

592 U.S. at 364. It then stated:

> "Now turn to <u>how</u> all this [forum-State] conduct <u>relates to</u> the claims in these cases, brought by state residents in [the forum States'] courts. <u>Each plaintiff's suit, of course, arises from a car accident in one of those States</u>. In each complaint, the resident-plaintiff alleges that a defective Ford vehicle … caused the crash and resulting harm. And as just described, Ford had advertised, sold, and serviced those two car models in both States for many years. … In other words, Ford had systematically served a market in [the forum States] for the very vehicles that the plaintiffs allege <u>malfunctioned and injured them in those States</u>. So there is a strong 'relationship among the defendant, the forum, and the litigation' -- the 'essential foundation' of specific jurisdiction."

<u>Ford</u>, 592 U.S. at 365 (citation omitted; emphasis added). The Court

looked not only to Ford's business conduct related to the forum states,

but also to the fact that the plaintiffs' claims arose from the fact that

accidents and resulting injuries occurred in the forum states. But the

case before us does not arise from misconduct or injury in Alabama.

Tanner "served a market" in Alabama,[5] but its services did not go wrong

---

[5]The allegations in this case in no way show that Tanner's business conduct in Alabama was as extensive as Ford's activities recounted in the <u>Ford</u> decision.

or injure Cole in that market. Thus, under the analysis in <u>Ford</u>, there is no "strong relationship" between Tanner, the litigation, <u>and Alabama</u>.

Further, in stressing that "allowing jurisdiction" in the forum states "treats Ford fairly," the Court noted that Ford enjoyed the benefits and protections of those forum states' laws, which created "reciprocal obligations" that the vehicles Ford produced "be safe for [the forum States'] citizens <u>to use there</u>." 592 U.S. at 367-68 (emphasis added). "An automaker regularly marketing a vehicle in a State … has 'clear notice' that it will be subject to jurisdiction in the State's courts <u>when the product malfunctions there</u>." <u>Id.</u> at 368 (citation omitted; emphasis added).

In this case, Tanner's affiliate advertised and performed medical services in Alabama. There may have been a "reciprocal obligation" that <u>those</u> services <u>in Alabama</u> "be safe" for Alabama citizens "there." But the medical service in this case did not occur in Alabama, was not made available to Cole there, did not allegedly go awry there, and did not injure Cole there. Thus, under these factors, at least under the <u>Ford</u> decision's analysis, "allowing jurisdiction" of this case in Alabama does not treat Tanner "fairly."

44

The Court in <u>Ford</u> concluded its analysis by discussing that "principles of 'interstate federalism'" supported the forum states having jurisdiction over the suits because they had "significant interests at stake -- 'providing [their] residents with a convenient forum for redressing injuries inflicted by out-of-state actors,' <u>as well as enforcing their own safety regulations</u>." <u>Id.</u> at 368 (citations omitted; emphasis added). In contrast, litigating each action in the state where the vehicle was sold, that is, where Ford argued that each action should have been commenced, would involve "all out-of-state parties, an out-of-state accident, and out-of-state injuries; the suit's only connection with the State is that a former owner once (many years earlier) bought the car there. In other words, there is a less significant 'relationship among the defendant, the forum, and the litigation.'" <u>Id.</u> (citations omitted). In this case, Alabama's interest in its own regulation of medical services has little bearing on what occurred in Georgia. This case, commenced in Alabama, itself involves "an out-of-state" tort, "out-of-state injuries," and out-of-state law.[6] Principles of interstate federalism do not support

---

[6]In <u>Sawyer</u>, this Court, in applying the decision in <u>Ford</u>, noted that "Alabama has a strong sovereign interest in providing a forum to people who are injured <u>on its roads and in enforcing its own safety regulations</u>

maintaining this action in Alabama. Cf. <u>Sawyer</u>, 412 So. 3d at 625 (applying the analysis in <u>Ford</u> and holding that "Alabama has a strong sovereign interest in providing a forum to people who are injured <u>on its roads and in enforcing its own safety regulations within its borders</u>" (emphasis added)).

<u>Ford</u> involves a factually distinguishable scenario, and a key factor -- that the parties were injured in the forum states -- does not exist here. It does not appear to me that the Supreme Court was prepared to say that extensive marketing activity and the servicing of products <u>is alone</u> sufficient to create specific personal jurisdiction. Instead, the Supreme Court also pointed to other things that occur in the forum states indicating that specific jurisdiction exists -- accidents, malfunctions, and injuries. While Tanner's affiliated facility in Alabama sent Cole to Georgia for treatment, that was not alleged to be part of the alleged medical malpractice; there was no wrongdoing in that act. Instead, the issue is how the subsequent medical procedure in Georgia was performed. <u>All</u> issues related to that occurred in Georgia. Thus, Tanner's

---

<u>within its borders</u>." 412 So. 3d at 625 (emphasis added). No such sovereign interest exists in this case.

contacts with Alabama were not "substantial enough" that it could fairly anticipate that the medical services provided directly to Cole in Georgia would subject it to a suit in Alabama.

I would grant the petition and issue the writ directing the trial court to dismiss Tanner for lack of personal jurisdiction.[7] I thus respectfully dissent to denying the petition.

---

[7]This pretermits discussion of the remaining issues raised in the petition.

SELLERS, Justice (dissenting).

I respectfully dissent. Tanner Medical Center, Inc. ("Tanner"), petitions this Court for a writ of mandamus directing the Randolph Circuit Court ("the circuit court") to dismiss the medical-malpractice claims asserted against it by Richard Terry Cole on the basis that the circuit court lacked personal jurisdiction over it or, alternatively, because venue is improper. Even assuming that the circuit court has jurisdiction over Tanner,[8] it is my opinion that this medical-malpractice action should not be tried in Alabama using Georgia's substantive law. The alleged negligence here is based on the failure to "accurately monitor the administration of contrast dye and blood thinner" during an "unnecessarily prolonged" medical procedure that occurred in Georgia. The alleged malpractice was not a continuing event that started in Alabama and concluded in Georgia. Rather, it was a one-time, limited event. The complaint fails to allege how this singular event has any

---

[8]I have grave concerns that the actions of an Alabama subsidiary of Tanner, albeit one with a similar name, which made an initial decision to transport Cole to Georgia, could create jurisdiction over a foreign corporation not registered, licensed, or doing business in Alabama, requiring it to defend a medical-malpractice action in which the alleged negligence occurred exclusively in Georgia.

relationship, much less a connection, to Alabama. Further, once the Georgia physician who allegedly caused the injury was dismissed with prejudice from this case pursuant to Alabama law, and Tanner remained the only defendant, proving vicarious liability became difficult, if not impossible. See University of Alabama Health Servs. Found., P.C. v. Bush, 638 So. 2d 794, 799 (Ala. 1994) ("Under the doctrine of respondeat superior, the master cannot be liable unless one of the master's servants has been found to be negligent."). Medical-malpractice statutes are highly specific laws, incorporating a distinct legal framework to impose liability for malpractice actions, including distinct provisions regarding venue, standards of care, expert requirements, the types and amounts of damages that can be awarded, and statutes of limitations. To prevail under these specific statutes, medical negligence must be proven by similarly situated expert witnesses providing specific testimony to explain how each defendant failed to comply with the standard of care applicable to each of them in their respective capacity. Thus, proceeding in this case by allowing Alabama courts to interpret or apply Georgia's unique medical-liability act could lead to inconsistent or conflicting rulings by the circuit court, and even this Court in the event of an appeal.

49

Accordingly, I would issue the writ of mandamus directing the circuit court to dismiss this action. It seems clear from the briefs in this case that the matter must ultimately be tried in Georgia. That is where the malpractice is alleged to have occurred, where the attending physician is licensed and resides, where records and witnesses are located, and where any alleged vicarious liability on the part of Tanner transpired. Thus, to burden Alabama with the litigation of this case will be a waste of judicial resources. At this stage of the litigation, we have a chance to fix the legal and administrative problems with this case while the applicable statute-of-limitations period is presumably still open, witnesses are available, and the incident is still fresh. Delaying the ultimate disposition of this case fails to appropriately serve the ends of justice to allow the injured party his day in a court of competent jurisdiction. Rather than untangle it, I would cut the Gordian knot, admit the inevitable, and direct the circuit court to dismiss the case.